1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                   SOUTHERN DISTRICT OF CALIFORNIA

10

11  JERRY L. ARMSTRONG,              )  Civil No. 06cv0852-L (RBB)
                                     )
12                Plaintiff,         )  **REPORT AND RECOMMENDATION RE:**
                                     )  **GRANTING DEFENDANTS' MOTION TO**
13  v.                               )  **DISMISS THE COMPLAINT AND**
                                     )  **STRIKE PUNITIVE DAMAGES [DOC.**
14  L. E. SCRIBNER, Warden; STUART   )  **NO. 19], DENYING PLAINTIFF'S**
    RYAN; TIM OCHOA; VIOLET THOMAS;  )  **MOTIONS TO FILE SUPPLEMENTAL**
15  ANTHONY VARIZ; JEFF SCHALLER;    )  **PLEADINGS [DOC. NOS. 10, 29,**
    NANCY GRANNIS; M. E. BOURLAND,   )  **38], AND DENYING PLAINTIFF'S**
16                                   )  **MOTION FOR PRELIMINARY**
                  Defendants.        )  **INJUNCTION [DOC. NO. 34]**
17                                   )
                                     )  **ORDER SUSTAINING DEFENDANTS'**
18                                   )  **OBJECTIONS TO DECLARATIONS**
    _____)  **[DOC. NO. 46]**
19

20      Plaintiff Jerry L. Armstrong, a state prisoner proceeding <u>pro</u>

21  <u>se</u> and <u>in</u> <u>forma</u> <u>pauperis</u>, filed an Amended Complaint on December 8,

22  2006 [doc. no. 6], pursuant to 42 U.S.C. § 1983.  Armstrong claims

23  that his right of access to the courts was violated when Defendant

24  Stuart Ryan failed to provide Plaintiff with access to a computer

25  to complete a petition for writ of certiorari, and as a result his

26  petition was dismissed by the Supreme Court.  (Am. Compl. 3.)

27  Plaintiff also alleges that Defendants violated his right of access

28  to the courts by adhering to policies that limited his ability to

                                    1

access the prison law library.  (_Id._ at 4.)  Plaintiff is seeking compensatory and punitive damages and an injunction requiring Defendants to provide inmates with better access to legal materials and computers.  (_Id._ at 7.)

On March 30, 2007, Defendants filed a Motion to Dismiss the First Amended Complaint [doc. no. 19].  Defendants claim the Amended Complaint should be dismissed because (1) Armstrong failed to exhaust his administrative remedies; (2) Plaintiff's allegations fail to state a federal claim; and (3) Defendants are entitled to qualified immunity.  (Mot. to Dismiss 1-2.)  Defendants also request that the Court dismiss the claims asserted against them in their official capacities because they are entitled to Eleventh Amendment immunity.  (Defs.' 3.)  Lastly, Defendants move the Court to strike Armstrong's request for punitive damages.  (_Id._ at 11-12.)  Defendants also filed the Declaration of D. Edwards in Support of Defendants' Motion to Dismiss [doc. no. 19] and a Request for Judicial Notice [doc. no. 19].

Plaintiff filed an Opposition to Defendants' Motion to Dismiss [doc. no. 21] on April 16, 2007.  Defendants filed a Reply [doc. no. 22] on April 26, 2007.  Armstrong also submitted a Response to Defendants' Reply [doc. no. 26], which the Court accepted for filing _nunc_ _pro_ _tunc_ to May 7, 2007 [doc. no. 25].

Also pending before the Court are Plaintiff's Motions to file supplemental pleadings [doc. nos. 10, 29, 38].  Armstrong's Rule 15 Motion to Amend [doc. no. 10] was filed _nunc_ _pro_ _tunc_ to January 19, 2007; Plaintiff seeks to add a claim that he was denied access to the courts when he could not access the prison law library in time to file a timely petition for rehearing in another § 1983

1   case, <u>Armstrong v. Garcia</u>, No. 03cv0279-WQH(POR) (S.D. Cal. filed

2   Feb. 10, 2003).  (First Mot. to Supplement 2-4.)

3        Plaintiff filed a second motion, titled a Motion Pursuant to

4   Rule 15(d) for Permission to Serve a Supplemental Pleading of a

5   Concurrent Denial of Access Claim [doc. no. 29], which was filed

6   <u>nunc pro tunc</u> to May 31, 2007.  He asserts an additional claim of

7   denial of access to the courts based on the fact that he tried to

8   file an application for relief from default in an another case,

9   <u>Armstrong v. Superior Court</u>, No. B197634 (Cal. Super. Ct.), but the

10  application was not timely received by the California Supreme

11  Court.  (Second Mot. to Supplement 4-5.)  Armstrong claims the

12  prison mail system is to blame for the untimeliness of his

13  application.  (<u>Id.</u> at 5-6.)

14       Plaintiff also submitted a Supplemental Motion for Permission

15  to Serve Additional Pleadings of a Concurrent Denial of Access

16  Claim [doc. no. 38] that was filed <u>nunc pro tunc</u> to July 12, 2007.

17  In this third Motion, Armstrong repeats the allegations made in his

18  first and second Motions to Amend.  (Third Mot. to Supplement 5-6.)

19  Additionally, Plaintiff claims that the prison officials failed to

20  mail two documents that Armstrong deposited for mailing.  (<u>Id.</u> at

21  1-2, 6-7.)  The Defendants have not filed any opposition to the

22  three motions to file a supplemental complaint.

23       Plaintiff submitted a Motion for Preliminary Injunction and/or

24  Temporary Restraining Order [doc. no. 34], which was filed <u>nunc pro</u>

25  <u>tunc</u> to June 28, 2007.  Armstrong asks the Court to issue an

26  injunction preventing CDC officials from transferring him from

27  Calipatria to a different prison.  (Mem. Supp. Mot. for Prelim.

28

1    Inj. 3-4.)  The Defendants have not filed an opposition to this

2    Motion.

3         On July 9, 2007, the Court issued a <u>Klingele</u>/<u>Rand</u> Notice [doc.

4    no. 35] warning Plaintiff of the pending Motion to Dismiss for

5    failure to exhaust.  Armstrong filed a Response [doc. no. 44], with

6    the Declaration of Jerry L. Armstrong, Exhibits A through H, the

7    Declarations of Inmate Denton and Dontea Woods, and the unsigned

8    Declarations of G. Silva, M. A. Hernandez, and Marie Davidoski.

9    Defendants filed an Objection to Plaintiff's Response [doc. no. 46]

10   on August 9, 2007.  Armstrong filed a Reply to Defendants'

11   Objection, which was filed <u>nunc</u> <u>pro</u> <u>tunc</u> to August 23, 2007 [doc.

12   no. 48].

13        The Court found Defendants' Motion to Dismiss suitable for

14   decision without oral argument pursuant to Civil Local Rule

15   7.1(d)(1) [doc. no. 23].  The Court also finds Plaintiff's Motions

16   to supplement and Motion for Preliminary Injunction suitable for

17   resolution on the papers.

18        For the reasons set forth below, the district court should

19   **GRANT** Defendants' Motion to Dismiss, **DENY** Plaintiff's Motions to

20   file supplemental pleadings, and **DENY** Plaintiff's Motion for

21   Preliminary Injunction and/or Temporary Restraining Order.

22                      **I. FACTUAL BACKGROUND**

23        Armstrong is a state prisoner incarcerated at Calipatria State

24   Prison.  (Am. Compl. 1.)  On February 23, 2004, Plaintiff attempted

25   to file a petition for writ of certiorari in the United States

26   Supreme Court, appealing from the denial of a habeas corpus

27   petition challenging his criminal conviction.  (<u>See</u> Pl.'s Mem. 5-6,

28   Ex. A at 4, Ex. C.)  Jennifer Sutton, from the Office of the Clerk

of the Supreme Court, returned the petition to Armstrong on February 26, 2004, because it did not comply with several formatting rules. (Pl.'s Mem. Ex. A at 4.) Plaintiff was given sixty days to file a corrected petition. (Id.)

On March 13, 2004, Armstrong sent a letter to Defendant Ryan, the warden of Calipatria prison, requesting that Plaintiff be allowed to access a computer to correct his certiorari petition. (Id. at 1.) According to Armstrong, Defendant Ryan never responded to the letter. (Pl.'s Mem. 4-5.) Plaintiff was not able to correct and resubmit his certiorari petition in a timely manner, and it was dismissed on May 4, 2004. (Id. at 5.)

Armstrong filed a § 1983 case in this Court on July 27, 2004, alleging that the Supreme Court Clerk denied him access to the courts by refusing to file his certiorari petition. (Am. Compl. 6; Pl.'s Mem. 9-10, Ex. C at 1.) The case was transferred to the District Court for the District of Columbia. (Pl.'s Mem. Ex. C at 1-2.) The case was subsequently dismissed for lack of jurisdiction. (Pl.'s Mem. Ex. D at 1.) Plaintiff refiled the case in the United States Court of Federal Claims, but it was again dismissed for lack of jurisdiction on March 3, 2005. (Pl.'s Mem. Ex. E at 1-2, Ex. F at 1.)

On November 14, 2004, Armstrong submitted an inmate grievance form (known as a "602 form"), complaining that the prison's policy of only allowing inmates to access the law library on their regular days off was unconstitutional and should be changed to allow better access. (Am. Compl. Ex. A at 3.) The grievance was denied at the informal level, and Plaintiff submitted it for the first formal level of review. (Id.) It was denied at the first formal level on

January 27, 2005, and Armstrong submitted it for second level review.  (<u>Id.</u> at 3-4, 7-8.)  The appeal was again denied.  (<u>Id.</u> at 4, 9.)  Plaintiff submitted the appeal to Director's level review, and it was denied on January 12, 2006.  (<u>Id.</u> at 1-2, 4.)

Armstrong claims that Defendant Ryan violated Plaintiff's right of access to the courts when he did not give Armstrong computer access to correct his certiorari petition.  (Pl.'s Mem. 5-8.)  He also asserts that he was denied access to the courts because the prison's policies for law library use and for the photocopying of legal materials, which were enforced by all Defendants, did not provide him with adequate time and materials to conduct legal research.  (<u>Id.</u> at 11-16.)  Plaintiff claims it was his inability to conduct research in a timely manner that caused his federal case against the Supreme Court Clerk to be dismissed by both the district court and the court of federal claims.  (<u>Id.</u> at 10-11.)

**II. LEGAL STANDARDS APPLICABLE TO THE FAILURE TO EXHAUST**

**A.   Motion to Dismiss Unexhausted Claims Pursuant to the Unenumerated Portions of Rule 12(b)**

Title 42 U.S.C. § 1997e(a) of the Prison Litigation Reform Act ("PLRA") states:  "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C.A. § 1997e(a) (West 2003).  The exhaustion requirement applies regardless of the relief sought. <u>Booth v. Churner</u>, 532 U.S. 731, 741 (2001).

1   "'[A]n action is "brought" for purposes of § 1997e(a) when the
2   complaint is tendered to the district clerk[]' . . . ." <u>Vaden v.</u>
3   <u>Summerhill</u>, 449 F.3d 1047, 1050 (9th Cir. 2006) (quoting <u>Ford v.</u>
4   <u>Johnson</u>, 362 F.3d 395, 400 (7th Cir. 2004)).  Therefore, prisoners
5   must "exhaust administrative remedies <u>before</u> submitting any papers
6   to the federal courts." <u>Id.</u> at 1048 (emphasis added).

7   Section 1997e(a)'s exhaustion requirement creates an
8   affirmative defense.  <u>Wyatt v. Terhune</u>, 315 F.3d 1108, 1119 (9th
9   Cir. 2003).  "[D]efendants have the burden of raising and proving
10  the absence of exhaustion." <u>Id.</u> (footnote omitted).  Defendants in
11  § 1983 actions properly raise the affirmative defense of failure to
12  exhaust administrative remedies through an unenumerated motion to
13  dismiss under Federal Rule of Civil Procedure 12(b).  <u>Id.</u>

14  Unlike Rule 12(b)(6) motions to dismiss for failure to state a
15  claim for which relief may be granted, "[i]n deciding a motion to
16  dismiss for failure to exhaust nonjudicial remedies, the court may
17  look beyond the pleadings and decide disputed issues of fact." <u>Id.</u>
18  at 1119-20 (citing <u>Ritza v. Int'l Longshoremen's & Warehousemen's</u>
19  <u>Union</u>, 837 F.2d 365, 369 (9th Cir. 1988)).  "A court ruling on a
20  motion to dismiss also may take judicial notice of 'matters of
21  public record.'" <u>Hazleton v. Alameida</u>, 358 F. Supp. 2d 926, 928
22  (C.D. Cal. 2005) (citing <u>Lee v. City of Los Angeles</u>, 250 F.3d 668,
23  688 (9th Cir. 2001)).  But "if the district court looks beyond the
24  pleadings to a factual record in deciding the motion to dismiss for
25  failure to exhaust[,] . . . the court must assure that [the
26  plaintiff] has fair notice of his opportunity to develop a record."
27  <u>Wyatt</u>, 315 F.3d at 1120 n.14.

28

"[When] the district court concludes that the prisoner has not exhausted nonjudicial remedies, the proper remedy is dismissal of the claim without prejudice."  Id. at 1120 (citing Ritza v. Int'l Longshoremen's & Warehousemen's Union, 837 F.2d at 368 & n.3).

**B.   The Administrative Grievance Process**

"The California Department of Corrections [CDC] provides a four-step grievance process for prisoners who seek review of an administrative decision or perceived mistreatment:  an informal level, a first formal level, a second formal level, and the Director's level." Vaden, 449 F.3d at 1048-49 (citing Brown v. Valoff, 422 F.3d 926, 929-30 (9th Cir. 2005)).  The administrative appeal system can be found in title 15, sections 3084.1, 3084.5, and 3084.6 of the California Code of Regulations.  See Brown, 422 F.3d at 929-30 (citing Cal. Code Regs. tit. 15, §§ 3084.1(a), 3084.5(a)-(b), (e)(1)-(2), 3084.6(c)).

To comply with the CDC's administrative grievance procedure, an inmate must file his grievance at the informal level "within 15 working days of the event or decision being appealed . . . ." Cal. Code Regs. tit. 15, § 3084.6(c) (2006); see also Brown, 422 F.3d at 929.  An inmate must proceed through all levels of the administrative grievance process before initiating a § 1983 suit in federal court.  See Vaden, 449 F.3d at 1051.

### III. PLAINTIFF'S FAILURE TO EXHAUST

**A.   Judicial Notice**

Defendants request that the Court take judicial notice of the Declaration of D. Edwards, which was submitted in support of Defendants' Motion to Dismiss.  (Request for Judicial Notice 1.) The Declaration indicates that a search of the CDC's Inmate/Parolee

Appeals Tracking System showed Plaintiff has only filed one prisoner appeal relating to library access, identified as Log No. 04-1655.  (Edwards Decl. ¶¶ 4-6.)  It further states that Armstrong has not filed any appeals relating to lack of computer access or lack of sufficient time to conduct library research.  (Id. ¶ 7.)

The Court may take judicial notice of any fact that is "not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b).  "A court shall take judicial notice if requested by a party and supplied with the necessary information."  Fed. R. Evid. 201(d).

Judicial notice may be taken of records of state agencies and other undisputed matters of public record.  Disabled Rights Action Comm. v. Las Vegas Events, Inc., 375 F.3d 861, 866 n.1 (9th Cir. 2004) (citing Lee v. City of Los Angeles, 250 F.3d 668, 689 (9th Cir. 2001)).  But the Court should not take judicial notice of agency records when the facts contained in them are subject to reasonable dispute.  Brown, 422 F.3d at 931 n.7 (quoting City of Sausalito v. O'Neill, 386 F.3d 1186, 1224 n.2 (9th Cir. 2004)); Lee, 250 F.3d at 689.  Also, a court should only take judicial notice of facts contained in agency records that bear "sufficient indicia of reliability . . . ."  United States v. Perez-Corona, 295 F.3d 996, 1001 n.4 (9th Cir. 2002).

The Court will take judicial notice of the fact that Plaintiff filed the 602 form bearing log number 04-1655, which is attached to his Amended Complaint.  (See Am. Compl. Ex. A.)  The Court also

9

judicially notices the fact that the grievance contained in that form was denied at all available levels of administrative review. These facts are not disputed by either party, and the 602 forms and accompanying documents bear stamps, markings and signatures indicating their authenticity.

Additionally, the Court takes judicial notice of the fact that the 602 form bearing log number 04-1655 is the only inmate grievance filed by Plaintiff from 2004 to the present alleging lack of library access, access to a computer, or lack of time to conduct legal research. Armstrong does not dispute this fact. This fact is sufficiently reliable because it is contained in the records of the CDC, which are kept in the ordinary course of business.

**B.   Defendants' Objections to Plaintiff's Evidence**

On July 9, 2007, the Court issued an Order [doc. no. 35] providing notice pursuant to Rand v. Rowland, 154 F.3d 952 (9th Cir. 1998), and Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988), that Defendants had moved to dismiss Plaintiff's Amended Complaint for failure to exhaust his administrative Remedies. The Order provided that if Armstrong had any additional evidence, declarations, or affidavits regarding the issue of exhaustion, he could submit them no later than July 31, 2007, before the Court ruled on the Motion to Dismiss. (Klingele/Rand Notice 2.) Plaintiff filed a Response to the Court's Klingele/Rand Notice [doc. no. 44], which included the Declaration of Jerry L. Armstrong, Exhibits A through H, the Declarations of Inmate Denton and Dontea Woods, and the unsigned proposed Declarations of G. Silva, M. A. Hernandez, and Marie Davidoski. Exhibits A, C, D and E are duplicative of exhibits previously filed with Armstrong's

1  Amended Complaint.  (See Am. Compl. Ex. A; Pl.'s Mem. Exs. A, C,
2  F.)

3     Defendants filed an Objection to Plaintiff's Response [doc.
4  no. 46].  Defendants object to Armstrong's Declaration "because it
5  contains argument and is full of irrelevant additional allegations
6  unrelated to this case or to the issue of exhaustion." (Defs.'
7  Objections 2.)  Plaintiff's Declaration contains argument in favor
8  of his underlying claims, and it also contains complaints about the
9  prison mail system not previously alleged in this suit.  (See
10 Armstrong Decl. 1-6.)  He asserts that he has attempted to file
11 several documents in the present case but when he deposited them in
12 the prison mail system, the prison officials withheld the documents
13 and refused to mail them.  (Armstrong Decl. ¶¶ 15-17.)  Exhibits F
14 and G to Armstrong's Declaration are copies of his prison mail log
15 which track his outgoing legal mail.  (See Armstrong Decl. Exs. F,
16 G.)  These logs do not list several documents that Armstrong
17 prepared for this case; he claims that prison officials
18 intentionally withheld these documents.  (See Armstrong Decl. ¶¶
19 15-22, Ex. F, Ex. G.)

20    Defendants' Objection to Armstrong's Declaration is sustained.
21 Plaintiff's arguments are not relevant to the claims in this case.
22 The Court also notes that Armstrong's fears are misplaced.  The
23 four documents that Plaintiff claims were withheld by prison
24 officials were in fact mailed to the Court, received, and filed
25 [doc. nos. 24, 32, 34].  (See Armstrong Decl. ¶¶ 29-30.)

26    Defendants also object to the proposed Declarations of Marie
27 Davidoski, M. A. Hernandez, and G. Silva because they are unsigned.
28 (Defs.' Objections 2.)  These declarations were drafted by

1   Armstrong and proffered to Davidoski, Hernandez, and Silva, but the
2   individuals refused to sign them.  (See Armstrong Decl. ¶¶ 31-32;
3   Silva Decl.; Davidoski Decl.; Hernandez Decl.)  Defendants'
4   objection to these declarations is sustained.  The declarations
5   have no evidentiary value because they were not signed by the
6   declarants.

7       Defendants object to the Declaration of Inmate Denton as
8   irrelevant.  (Defs.' Objections 2.)  Denton is an inmate at
9   Calipatria Prison who states that he has witnessed Armstrong
10  deposit documents for mailing to the Court, and he has heard
11  Plaintiff complain that they were never mailed.  (Denton Decl. ¶¶
12  2-5.)  Denton also declares that he is currently experiencing
13  problems with the prison mail system in connection with his own
14  litigation.  (Id. ¶ 6.)  Defendants' objection to Denton's
15  Declaration is sustained.  This litigation is not concerned with
16  any alleged deficiencies of the prison mail system.  Rather, the
17  issue before the Court is whether Armstrong properly exhausted his
18  administrative remedies before filing his Complaint alleging that
19  he was denied access to the courts.

20      Defendants also object to the Declaration of Dontea Woods on
21  relevance grounds.  (Defs.' Objections 2.)  Woods is another inmate
22  at Calipatria prison.  (Woods Decl. ¶¶ 2-3.)  His Declaration
23  relates some of Plaintiff's complaints about the prison mail
24  system.  (See id. ¶¶ 5-10.)  Defendants' objection is sustained
25  because Woods's Declaration is irrelevant to the issue of
26  exhaustion, and it concerns claims about the prison mail system
27  that are not a part of this lawsuit.
28

**C.   Merits of Defendant's Claim that Armstrong Failed to Exhaust**

Defendants assert that because Armstrong only filed an administrative grievance complaining about the prison's policy of allowing law library access on an inmate's regular day off ("RDO"), none of Plaintiff's other claims are exhausted.  (Defs.' Mem. 5.) Accordingly, Defendants move the Court to dismiss Armstrong's claims "regarding access to a computer, lack of time to conduct adequate research, or complaints regarding the prison's photocopy policy" because prison officials were never put on notice of these allegations through the administrative process. (Id.)

To adequately exhaust his administrative remedies, a prisoner's administrative grievances must be "sufficient under the circumstances to put the prison on notice of the potential claims and to fulfill the basic purposes of the exhaustion requirement." Irvin v. Zamora, 161 F. Supp. 2d 1125, 1135 (S.D. Cal. 2001). Exhaustion serves several important goals, including "allowing a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record." Jones v. Bock, 549 U.S. __, 127 S. Ct. 910, 923 (2007) (citing Woodford v. Ngo, 548 U.S. __, 126 S. Ct. 2378, 2387-88 (2006); Porter v. Nussle, 534 U.S. 516, 524 (2002)).

**1.   Claim One:  Denial of Access to a Computer**

In count one, Armstrong claims he requested that Defendant Ryan allow him to access a computer to correct Plaintiff's petition for writ of certiorari, but Ryan did not respond to his request. (Am. Compl. 3.)  Armstrong argues that because he was not given

1   computer access, he was not able to timely correct the formatting

2   errors in his certiorari petition, and consequently, the petition

3   was dismissed as untimely.  (_Id._)

4        The PLRA provides that before filing a lawsuit in federal

5   court, a prisoner must exhaust all available administrative

6   remedies.  _Woodford v. Ngo_, 548 U.S. at __, 126 S. Ct. at 2382.

7   This is true regardless of the relief sought, whether monetary or

8   injunctive.  _Id._ at 1283 (citing _Booth_, 532 U.S. at 734).  The PLRA

9   requires proper exhaustion, meaning that the prisoner must comply

10  with the "agency's deadlines and other critical procedural

11  rules . . . ."  _Id._ at 2386.  In California, administrative

12  remedies are exhausted when a prisoner files a 602 within fifteen

13  days of the event complained of and pursues it through all three

14  levels of review.  _Brown_, 422 F.3d at 935; _Butler v. Adams_, 397

15  F.3d 1181, 1183 (9th Cir. 2005); _Hazleton v. Alameida_, 358 F. Supp.

16  2d 926, 929 (C.D. Cal. 2005).

17       On March 13, 2004, Plaintiff sent a letter to Defendant Ryan,

18  the Warden of Calipatria State Prison.  (_See_ Pl.'s Mem. Ex. A.)

19  Armstrong informed Ryan that his certiorari petition was returned

20  to him by the Supreme Court because it did not comply with the

21  Court's formatting rules.  (_Id._ at 1.)  Plaintiff asked Ryan to

22  allow him to use a computer to correct his petition.  (_Id._)  He

23  indicated that his certiorari petition was due by April 26, 2004,

24  so Ryan's immediate attention was requested.  (_Id._ at 1-2.)

25  According to Armstrong, Ryan never responded to the letter, and

26  Plaintiff was never given computer access.  (Pl.'s Mem. 5.)

27  Armstrong's petition was dismissed on May 4, 2004, for failure to

28  timely submit a corrected petition.  (_Id._)

Plaintiff did not submit a 602 form either to request computer access or to complain after his certiorari petition was dismissed by the Supreme Court.  Armstrong argues, however, that claim one of his Amended Complaint should not be dismissed for failure to exhaust because the letter to Defendant Ryan put Defendants on notice of his need to access a computer to complete his certiorari petition within the Supreme Court's deadline.  (Pl.'s Surreply 3-4.)  Also, Plaintiff contends he was not required to submit an administrative grievance because "Defendants had already refused to respond to Plaintiff's lettered communication to the Warden," so there was no reason for him to believe the prison officials would have responded to a 602.  (Pl.'s Opp'n 4.)  Brown v. Sikes, 212 F.3d 1205, 1209-10 (11th Cir. 2000), relied upon by Armstrong, only holds that the prisoner's failure to name the prison warden and Commissioner of the Georgia Department of Corrections in the administrative grievance was not a failure to exhaust because the prisoner did not have that information.  It is not authority for reading claims into a grievance that were not stated.

Plaintiff cites Wyatt v. Leonard, 193 F.3d 876, 878 (6th Cir. 1999), in support of his argument that informally written complaints, such as his letter to Defendant Ryan, are sufficient to satisfy the exhaustion requirement.  (Pl.'s Surreply 3.)  In Wyatt v. Leonard, the court found the plaintiff had satisfied the exhaustion requirement by giving the prison officials informal notice of his complaint, even though he did not file a grievance on the standardized form.  Wyatt v. Leonard, 193 F.3d at 880.  The court stated that substantial compliance with the exhaustion requirement was sufficient.  Id.  The court's holding in that case,

however, does not save Armstrong's claim.  The incident that was the subject of the plaintiff's complaint in Wyatt occurred before the PLRA went into effect.  See id.  Since the PLRA, substantial compliance with exhaustion rules is no longer sufficient.  A prisoner must properly exhaust all claims administratively before filing suit in federal court.  Woodford v. Ngo, 548 U.S. at __, 126 S. Ct. at 2386.

Plaintiff admits that he did not fully develop the factual and legal basis of his claim at the administrative level.  (See Pl.'s Opp'n 4.)  He argues, essentially, that he should be excused from this requirement because filing an administrative grievance would not have produced a different outcome.  (Id.)  Since Booth v. Churner, exceptions to the exhaustion requirement are limited.  The Supreme Court explained:  "Thus, we think that Congress has mandated exhaustion clearly enough, regardless of the relief offered through administrative procedures."  Booth, 532 U.S. at 741 (citing McCarthy v. Madigan, 503 U.S. 140, 144 (1992)).  Specifically, the Court stressed that there is no futility exception to the exhaustion requirement; the Court would not create such a rule because Congress did not include such an exception in the text of the PLRA.  Id. at 741 n.6.  The congressional mandate precludes Armstrong from arguing that he need not exhaust because exhaustion would be futile or that the agency has no power to award the monetary relief requested.  Claim one of Plaintiff's Amended Complaint is not exhausted and, therefore, should be dismissed.

**2.  Claim Two:  Lack of Adequate Law Library Access**

In count two of his Amended Complaint, Armstrong contends that he was denied access to the courts because the CDC's library

policies gave him an inadequate opportunity to access the prison
law library to conduct research.  (Am. Compl. 4.)  Plaintiff
complains that allowing inmates to access the law library for one
two-hour period of time each week, and only on the inmate's regular
day off from work and training programs, does not provide
sufficient time for meaningful research.  (Pl.'s Mem. 4, 11-12.)

Armstrong's 602 form, which was submitted for informal review
on November 14, 2004, and denied at the director's level on January
12, 2006, contained one complaint:  "Your policy of ducating
inmates only on their RDO's for law library access is
unconstitutional."  (Am. Compl. Ex. A at 3.)  Plaintiff requested
that the prison "[r]evert to [its] former policy of ducating
inmates to [the] law library."  (Id.)  This 602 was pursued through
all available levels of administrative review.  (See id. at 1-9.)

Defendants contend that this administrative grievance was not
sufficient to put the prison staff on notice of Plaintiff's claim
that he was denied sufficient time to access the law library.
(Defs.' Mem. 5; Reply 3.)  Defendants, however, construe
Armstrong's administrative appeal too narrowly.

When Plaintiff pursued his grievance to the first formal level
of review, he was interviewed by E. Garcia.  (Am. Compl. Ex. A at
7.)  During the interview, Armstrong complained that Library
Technical Assistant Raske refused to allow Plaintiff to access the
law library during his regular work hours, which forced him to
choose between library access and other activities such as family
visits and outdoor exercise.  (Id.)  Armstrong also complained
"that two ducats in the same day is not enough time for individuals
with court deadlines" to conduct library research.  (Id.)  When

Plaintiff's grievance was denied at the first formal level, he appealed to the second formal level and claimed that although he submitted a request for law library access seven days earlier, he had not yet received a library ducat.  (Id. at 4.)

Armstrong's 602 was accompanied by a copy of a memorandum from Plaintiff to Defendant Violet Thomas, Supervisor of Education Program, dated November 4, 2004.  (Id. at 11-12.)  The memorandum complained that Armstrong had a civil case pending in the District of Columbia, but he was not getting enough time in the law library to conduct the necessary "lengthy research and study."  (Id.)

These specific allegations were included with Armstrong's administrative grievance.  During the pursuit of that grievance, the prison administrators at each level of review were put on notice that Plaintiff claimed he was not being given adequate access to the law library.  The Defendants read Armstrong's grievance too narrowly.  (See Motion to Dismiss 4-5.)  Because Plaintiff presented the claim alleged in count two administratively, it is properly exhausted.  See Irvin, 161 F. Supp. 2d at 1135 (finding a claim exhausted where "plaintiff's grievances were sufficient under the circumstances to put the prison on notice of the potential claims and to fulfill the basic purposes of the exhaustion requirement").

### 3.   Denial of Photocopies

In Plaintiff's Memorandum of Points and Authorities in support of his Amended Complaint, Armstrong also asserts that the CDC's policy for photocopying legal materials is unconstitutional.  (Pl.'s Mem. 13.)  He claims that the prison will not provide inmates with photocopies of case opinions, pages from legal

treatises, or trial transcripts. (<u>Id.</u> at 13-14.) Plaintiff contends it is useful to attach copies of these documents to court filings, but it is not practical for an inmate to replicate them by hand due to their length. (<u>Id.</u> at 14-15.)

Armstrong did not raise these factual or legal allegations in the 602 form submitted to prison staff. He claims to have "alerted prison officials on several occasions" to this problem, but he does not provide any documentary support for this allegation. (<u>Id.</u> at 15.) Because Plaintiff did not follow any of the proper procedures for presenting this complaint to the prison administrators, it is unexhausted and cannot be considered by the Court.

Armstrong properly exhausted his administrative remedies with regard to claim two of his Amended Complaint, and accordingly he may proceed with that claim. Claim one of Plaintiff's Amended Complaint and Armstrong's allegations about photocopy policies, however, were not exhausted through the CDC's administrative grievance process before the present suit was filed. These claims should be **DISMISSED WITHOUT PREJUDICE**. Plaintiff may only proceed with the one exhausted claim. <u>See</u> <u>Jones v. Bock</u>, 549 U.S. at __, 127 S. Ct. at 924-25 (holding that unexhausted claims should be dismissed and the complaint allowed to proceed with exhausted claims); <u>Vaden</u>, 449 F.3d at 1051 (citing <u>Wyatt</u>, 315 F.3d at 1120) (requiring that a dismissal under the PLRA for failure to properly exhaust administrative remedies be a dismissal without prejudice).

**III. LEGAL STANDARDS APPLICABLE TO 12(b)(6) MOTION TO DISMISS**

**A.   <u>Motions to Dismiss For Failure to State a Claim</u>**

A motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal

sufficiency of the claims in the complaint.  <u>Davis v. Monroe County Bd. of Educ.</u>, 526 U.S. 629, 633 (1999).  A claim can only be dismissed "if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief."  <u>Hughes v. Rowe</u>, 449 U.S. 5, 10 n.7 (1980) (quotations and citations omitted).  The Court must accept as true all material allegations in the complaint, as well as reasonable inferences to be drawn from them, and must construe the complaint in the light most favorable to the plaintiff.  <u>Cholla Ready Mix, Inc. v. Civish</u>, 382 F.3d 969, 973 (9th Cir. 2004) (citing <u>Karam v. City of Burbank</u>, 352 F.3d 1188, 1192 (9th Cir. 2003)); <u>Parks Sch. of Bus., Inc. v. Symington</u>, 51 F.3d 1480, 1484 (9th Cir. 1995); <u>N.L. Indus., Inc. v. Kaplan</u>, 792 F.2d 896, 898 (9th Cir. 1986).

The Court looks not at whether the plaintiff will "ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."  <u>Scheuer v. Rhodes</u>, 416 U.S. 232, 236 (1974).  A dismissal under Rule 12(b)(6) is generally proper only where there "is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory."  <u>Navarro v. Block</u>, 250 F.3d 729, 732 (9th Cir. 2001); <u>Balistreri v. Pacifica Police Dep't</u>, 901 F.2d 696, 699 (9th Cir. 1988).

The Court need not accept conclusory allegations in the complaint as true; rather, it must "examine whether [they] follow from the description of facts as alleged by the plaintiff."  <u>Holden v. Hagopian</u>, 978 F.2d 1115, 1121 (9th Cir. 1992) (citation omitted); <u>Halkin v. VeriFone, Inc.</u>, 11 F.3d 865, 868 (9th Cir. 1993); <u>see also Cholla Ready Mix</u>, 382 F.3d at 973 (citing <u>Clegg v. Cult Awareness Network</u>, 18 F.3d 752, 754-55 (9th Cir. 1994))

(stating that on Rule 12(b)(6) motion, a court "is not required to accept legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged[]").  "Nor is the court required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."  Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001).

In addition, when resolving a motion to dismiss for failure to state a claim, the Court may not generally consider materials outside the pleadings.  Schneider v. Cal. Dep't of Corrs., 151 F.3d 1194, 1197 n.1 (9th Cir. 1998); Jacobellis v. State Farm Fire & Cas. Co., 120 F.3d 171, 172 (9th Cir. 1997); Allarcom Pay Television Ltd. v. Gen. Instrument Corp., 69 F.3d 381, 385 (9th Cir. 1995).  "The focus of any Rule 12(b)(6) dismissal . . . is the complaint."  Schneider, 151 F.3d at 1197 n.1.  This precludes consideration of "new" allegations that may be raised in a plaintiff's opposition to a motion to dismiss brought pursuant to Rule 12(b)(6).  Id. (citing Harrell v. United States, 13 F.3d 232, 236 (7th Cir. 1993); 2 James Wm. Moore et al., Moore's Federal Practice § 12.34[2] (3d ed. 1997) ("The court may not . . . take into account additional facts asserted in a memorandum opposing the motion to dismiss, because such memoranda do not constitute pleadings under Rule 7(a).").

But "[w]hen a plaintiff has attached various exhibits to the complaint, those exhibits may be considered in determining whether dismissal [i]s proper . . . ."  Parks Sch. of Bus., 51 F.3d at 1484 (citing Cooper v. Bell, 628 F.2d 1208, 1210 n.2 (9th Cir. 1980)).  The Court may also consider "documents whose contents are alleged

1    in a complaint and whose authenticity no party questions, but which

2    are not physically attached to the pleading . . . ." <u>Branch v.</u>

3    <u>Tunnell</u>, 14 F.3d 449, 454 (9th Cir. 1994), <u>overruled</u> <u>on</u> <u>other</u>

4    <u>grounds</u> <u>by</u> <u>Galbraith v. County of Santa Clara</u>, 307 F.3d 1119 (9th

5    Cir. 2002); <u>Stone v. Writer's Guild of Am. W., Inc.</u>, 101 F.3d 1312,

6    1313-14 (9th Cir. 1996).

7        These Rule 12 (b)(6) guidelines apply to Defendants' Motion to

8    Dismiss.

9    **B.    <u>Standards Applicable to Pro Se Litigants</u>**

10       Where a plaintiff appears in propria persona in a civil rights

11   case, the Court must construe the pleadings liberally and afford

12   the plaintiff any benefit of the doubt.  <u>Karim-Panahi v. Los</u>

13   <u>Angeles Police Dep't</u>, 839 F.2d 621, 623 (9th Cir. 1988).  The rule

14   of liberal construction is "particularly important in civil rights

15   cases."  <u>Ferdik v. Bonzelet</u>, 963 F.2d 1258, 1261 (9th Cir. 1992).

16   In giving liberal interpretation to a pro se civil rights

17   complaint, however, the Court may not "supply essential elements of

18   claims that were not initially pled."  <u>Ivey v. Bd. of Regents of</u>

19   <u>the Univ. of Alaska</u>, 673 F.2d 266, 268 (9th Cir. 1982).  "Vague and

20   conclusory allegations of official participation in civil rights

21   violations are not sufficient to withstand a motion to dismiss."

22   <u>Id.</u>; <u>see</u> <u>also</u> <u>Jones v. Cmty. Redev. Agency</u>, 733 F.2d 646, 649 (9th

23   Cir. 1984) (finding conclusory allegations unsupported by facts

24   insufficient to state a claim under § 1983).  "The plaintiff must

25   allege with at least some degree of particularity overt acts which

26   defendants engaged in that support the plaintiff's claim."  <u>Jones</u>,

27   733 F.2d at 649 (internal quotation omitted).

28

1    Nevertheless, the Court must give a pro se litigant leave to
2 amend his complaint unless it is "absolutely clear that the
3 deficiencies of the complaint could not be cured by amendment."
4 Noll v. Carlson, 809 F.2d 1446, 1447 (9th Cir. 1987).  Thus, before
5 a pro se civil rights complaint may be dismissed, the court must
6 provide the plaintiff with a statement of the complaint's
7 deficiencies.  Karim-Panahi, 839 F.2d at 623-24.  Where amendment
8 of a pro se litigant's complaint would be futile, denial of leave
9 to amend is appropriate.  See James v. Giles, 221 F.3d 1074, 1077
10 (9th Cir. 2000).

11 **C.   Stating a Claim Under 42 U.S.C. § 1983**

12    To state a claim under § 1983, the plaintiff must allege facts
13 sufficient to show (1) a person acting "under color of state law"
14 committed the conduct at issue, and (2) the conduct deprived the
15 plaintiff of some right, privilege, or immunity protected by the
16 Constitution or laws of the United States.  42 U.S.C.A. § 1983
17 (West 2003); Shah v. County of Los Angeles, 797 F.2d 743, 746 (9th
18 Cir. 1986).

19                    **IV. DEFENDANTS' MOTION TO DISMISS**

20    Defendants move to dismiss Armstrong's Amended Complaint under
21 Federal Rule of Civil Procedure 12(b)(6) for failure to allege
22 facts sufficient to state a claim for relief under 42 U.S.C. §
23 1983.  (Defs.' Mem. 5.)  They assert that Plaintiff's allegations
24 do not show the personal involvement of the six individual
25 Defendants, and thus he cannot prove that they caused a violation
26 of his rights.  (Id. at 7.)  Also, Defendants claim Armstrong has
27 not alleged facts constituting a violation of his right of access
28 to the courts.  (Id. at 8.)  Additionally, Defendants contend they

1   are entitled to qualified immunity and that they are entitled to

2   absolute Eleventh Amendment immunity for all actions taken in their

3   official capacities.  (Id. at 3, 9-10.)  Finally, Defendants ask

4   the Court to strike Plaintiff's request for punitive damages.  (Id.

5   at 11-12.)

6   **A.   Eleventh Amendment Immunity**

7        The Eleventh Amendment grants the states immunity from private

8   civil suits.  U.S. Const. amend. XI; Henry v. County of Shasta, 132

9   F.3d 512, 517 (9th Cir. 1997), as amended, 137 F.3d 1372 (9th Cir.

10  1998).  This immunity applies to civil rights claims brought under

11  § 1983, so an inmate cannot recover damages from the state under §

12  1983 unless the state waives its immunity.  Will v. Mich. Dep't of

13  State Police, 491 U.S. 58, 66 (1989).  A federal court only has

14  jurisdiction over a suit against a state when the relief sought is

15  "prospective injunctive relief in order to end a continuing

16  violation of federal law."  Armstrong v. Wilson, 124 F.3d 1019,

17  1025 (9th Cir. 1997) (quoting Seminole Tribe of Fla. v. Florida,

18  517 U.S. 44, 73 (1996)) (internal quotations omitted).

19       Eleventh Amendment immunity also extends to state officials

20  sued in their official capacities.  "[A] suit against a state

21  official in his or her official capacity is not a suit against the

22  official but rather is a suit against the official's office."

23  Will, 491 U.S. at 71 (citing Brandon v. Holt, 469 U.S. 464, 471

24  (1985)).  "As such, it is no different from a suit against the

25  State itself."  Id. (citing Kentucky v. Graham, 473 U.S. 159, 165-

26  66 (1985); Monell v. Dep't of Soc. Servs. of N.Y., 436 U.S. 658,

27  690 n.55 (1978)).

28

Armstrong's Amended Complaint asserts claims against each of the Defendants in both their individual and their official capacities. (Am. Compl. 2-2a.) Defendants argue that they are entitled to immunity under the Eleventh Amendment for actions taken in their official capacities, and Plaintiff agrees. (Defs.' Mem. 3; Pl.'s Opp'n 2.) Armstrong's claims against Defendants in their official capacities constitute claims against the State of California, which is immune from liability for damages. Accordingly, Plaintiff's claims should be **DISMISSED** to the extent that Defendants are sued in their official capacities. Armstrong may only proceed against Defendants as individuals.

**B.  Failure to Allege the Personal Involvement of Defendants**

To be liable under § 1983, a person acting under color of state law must cause the plaintiff to suffer the violation of a constitutional right. 28 U.S.C. § 1983. "A person 'subjects' another to the deprivation of a constitutional right . . . if he does an affirmative act, participates in another's affirmative act, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978) (citing Sims v. Adams, 537 F.2d 829 (5th Cir. 1976)). Thus, to state a claim under § 1983, Plaintiff must allege that each of the Defendants committed some act, or failed to act in some way, which caused Armstrong's alleged injury. See Williams v. Bennett, 689 F.2d 1370, 1384 (11th Cir. 1982). "The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a

constitutional deprivation."   <u>Leer v. Murphy</u>, 844 F.2d 628, 633
(9th Cir. 1988) (citations omitted).

      Defendants argue Plaintiff's claims must be dismissed because
he has not alleged that the individuals each committed actions that
denied him access to the courts.  (Defs.' Mem. 7.)  Armstrong's
Opposition to the Motion to Dismiss attempts to refute this
argument with the conlcusory statement that his Amended Complaint
"alleges facts sufficient to show that he had been actually injured
by specific actions of the Defendants."  (Pl.'s Opp'n 7.)

      The first cause of action states, "On March 13, 2004,
Plaintiff wrote a letter to S. Ryan (defendant), asking for
assistance to make a computer accessible to correct the Petition
for Writ of Certiorari.  Defendant S. Ryan failed to respond to my
request."  (Am. Compl. 3.)  Armstrong further states that Defendant
Ryan's failure to provide Plaintiff with computer access violated
his right of access to the courts because it caused his petition
for certiorari to be dismissed as untimely.  (<u>Id.</u>; Pl.'s Mem. 4-5.)
Armstrong's Amended Complaint alleges a specific omission by
Defendant Ryan that purportedly caused a specific injury.

      The Amended Complaint, however, does not allege that specific
actions or omissions by the other Defendants caused Plaintiff any
injury.  For each of the Defendants except Defendant Ryan, the only
allegation is that each Defendant "[c]ontinuously cited DOM sec.(s)
53060.10, and 14010.21.2, 14010.21.3, as sufficient to overcome
Plaintiff's Constitutional right to access to the courts."  (Am.
Compl. 2-3.)  Armstrong does not provide any specific facts
regarding acts or omissions by Defendants that denied him access to
the courts.  Plaintiff's § 1983 claims cannot survive without any

factual allegations showing that Defendants "actually and proximately caused" a violation of Armstrong's constitutional rights.  <u>Galen v. County of Los Angeles</u>, 477 F.3d 652, 659, 663 (9th Cir. 2007) (citing <u>Leer</u>, 844 F.2d at 634).  Accordingly, all of Plaintiff's claims, except for count one as alleged against Defendant Ryan, should be **DISMISSED** for failure to state a claim because Armstrong does not allege facts that would show the remaining Defendants were personally involved in actions causing a deprivation of his rights.

**C.   Failure to Allege Facts Establishing a Violation of the Right to Access the Courts**

"Under the First and Fourteenth Amendments to the Constitution, state prisoners have a right of access to the courts." <u>Phillips v. Hust</u>, 477 F.3d 1070, 1075 (9th Cir. 2007) (citing <u>Lewis</u>, 518 U.S. at 346).  "[T]he fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." <u>Bounds v. Smith</u>, 430 U.S. 817, 828 (1977).  Access to the courts means that a prisoner has the opportunity to prepare, serve, and file court documents in cases affecting his liberty.  <u>Phillips</u>, 477 F.3d at 1075-76 (quoting <u>Lewis</u>, 518 U.S. at 384).

There are two types of access to courts claims:  backward-looking and forward-looking.  A backward-looking claim concerns a lost opportunity to litigate a particular case or to obtain a particular result or type of relief in a case that was litigated poorly.  <u>Christopher v. Harbury</u>, 536 U.S. 403, 413-14 (2002).  A

forward-looking claim, on the other hand, concerns "official action [which] is presently denying an opportunity to litigate for a class of potential plaintiffs." Id. at 413.

Both of Armstrong's causes of action are backward-looking claims. In claim one, Plaintiff asserts that Defendant Ryan did not allow him to use a computer, and as a result his certiorari petition was dismissed by the Supreme Court. (Am. Compl. 3.) In his second claim, Armstrong argues that the prison policies enforced by Defendants denied him adequate time in the law library, which caused his lawsuit against Jennifer Sutton to be dismissed by the Court of Federal Claims. (Id. at 4.)

To adequately plead a backward-looking denial of access claim, Plaintiff must allege three elements: "1) the loss of a 'nonfrivolous' or 'arguable' underlying claim; 2) the official acts frustrating the litigation; and 3) a remedy that may be awarded as recompense but that is not otherwise available in a future suit." Phillips, 477 F.3d at 1076 (citing Christopher, 536 U.S. at 413-14).

**1.   Claim One:  Denial of Access to a Computer**

Defendants argue that Armstrong's first cause of action fails to state a claim because Plaintiff was not denied the ability to access the courts by Defendant Ryan's failure to provide a computer for his use. (Defs.' Mem. 9.) Defendants contend that Plaintiff could have submitted a handwritten certiorari petition within the applicable time period, thus avoiding dismissal for untimeliness, so he has not suffered an actual injury caused by Defendants' conduct. (Id.)

a.   <u>Frivolous Nature of the Underlying Claim</u>

The first element -- loss of a nonfrivolous claim -- concerns Armstrong's standing to file suit.  <u>Phillips</u>, 477 F.3d at 1076.  To have standing to assert a claim for denial of access to the courts, Plaintiff must allege that he suffered an actual injury.  <u>Lewis</u>, 518 U.S. at 351; <u>Vandelft v. Moses</u>, 31 F.3d 794, 798 (9th Cir. 1994).  A prisoner will only succeed on an access-to-courts claim if he was denied the necessary tools to litigate a nonfrivolous claim attacking his conviction, sentence, or conditions of confinement.  <u>Christopher</u>, 536 U.S. at 415; <u>Lewis</u>, 518 U.S. at 353 & n.3.

Armstrong's certiorari petition sought review of the lower federal courts' denial of a petition for writ of habeas corpus which challenged the legality of his conviction.  (<u>See</u> Pl.'s Mem. Ex. B (Pet. for Cert.) at 3-7.)  The certiorari petition appears to allege that at Plaintiff's preliminary hearing he received ineffective assistance of counsel, he was denied the right to produce exculpatory evidence, and the prosecutor knowingly presented false testimony.  (<u>See id.</u> at 8-13.)  The petition also complains that Armstrong was not given an evidentiary hearing on his federal habeas petition.  (<u>Id.</u> at 15-16.)

Several courts have addressed what constitutes a frivolous claim.  "A claim is frivolous if it is without arguable merit either in law or fact."  <u>Bilal v. Driver</u>, 251 F.3d 1346, 1349 (11th Cir. 2001) (citations omitted).  Frivolous claims are those with "little or no chance of success."  <u>Carroll v. Gross</u>, 984 F.2d 392, 393 (11th Cir. 1993).  Plaintiff need not show that he would have been successful on the merits of his claims, but only that they

1   were not frivolous.  <u>Simkins v. Bruce</u>, 406 F.3d 1239, 1244 (10th

2   Cir. 2005); <u>Walters v. Edgar</u>, 163 F.3d 430, 434 (7th Cir. 1998);

3   <u>Allen v. Sakai</u>, 48 F.3d 1082, 1085, 1091 & n.12 (9th Cir. 1994).

4   There is nothing before the Court to suggest that the claims

5   Armstrong presented in his certiorari petition were frivolous.

6   Indeed, Defendants do not make such a contention.  Viewing

7   Plaintiff's Amended Complaint in the light most favorable to him,

8   the Court is satisfied, for the purposes of resolving Defendants'

9   Motion to Dismiss, that Armstrong's certiorari petition was a

10   nonfrivolous attack on his criminal conviction.

11         b.   <u>Causation</u>

12      The second element requires Plaintiff to show "the alleged

13   violation of his rights was proximately caused" by the state actor.

14   <u>Phillips</u>, 477 F.3d at 1077 (citing <u>Crumpton v. Gates</u>, 947 F.2d

15   1418, 1420 (9th Cir. 1991)).  The proximate cause analysis focuses

16   on foreseeability -- was it foreseeable that the state actor's

17   actions would cause the deprivation of the prisoner's right to

18   access the courts?  <u>Id.</u> (citing <u>Tahoe-Sierra Pres. Council, Inc. v.</u>

19   <u>Tahoe Reg'l Planning Agency</u>, 216 F.3d 764, 784-85 (9th Cir. 2000)).

20      The Ninth Circuit has held that "inmates have no right to a

21   typewriter [or computer] to prepare legal documents where court

22   rules permit pro se litigants to hand-write their pleadings." <u>Id.</u>

23   (citing <u>Lindquist v. Idaho State Bd. of Corr.</u>, 776 F.2d 851, 858

24   (9th Cir. 1985)); <u>see also</u> <u>Sands v. Lewis</u>, 886 F.2d 1166, 1169 (9th

25   Cir. 1989).  Supreme Court Rule 39 allows petitioners proceeding <u>in</u>

26   <u>forma</u> <u>pauperis</u> to file documents that do not comply with strict

27   formatting requirements.  Sup. Ct. R. 39.  Defendants argue the

28   dismissal of Plaintiff's certiorari petition was not caused by

Defendant Ryan's actions because Armstrong did not need computer access to complete a certiorari petition under the applicable Supreme Court rules.  (Defs.' Mem. 9.)

Defendants' argument ignores one fact:  Plaintiff was not proceeding in forma pauperis before the Supreme Court.  (See Pl.'s Mem. Ex. A Attach. at 2 (stating that a $300.00 filing fee had accompanied his certiorari petition).)  Accordingly, Rule 39, which allows for in forma pauperis petitioners to file documents that do not comply with ordinary formatting rules, did not apply to Armstrong.  Plaintiff's certiorari petition was required to comply with the formatting rules contained in Supreme Court Rule 33.  Cf. Attwood v. Singletary, 516 U.S. 297, 297 (1996) (requiring pro se petitioner's certiorari petition to comply with Rule 33 when the Court denied him in forma pauperis status).  Rule 33 provides that all documents filed with the Court must be prepared in a booklet format and must comply with strict formatting requirements including font size, paper type and size, and binding.  See Sup. Ct. R. 33.

Defendants are correct in asserting that prisoners do not have a constitutional right to use a computer.  (See Defs.' Mem. of P. & A. 9 (citing Phillips, 477 F.3d at 1084).)  But that is not the end of the inquiry.  Prison officials are not required to provide inmates with all the materials they request, but inmates must be provided with "some means of preparing documents that comply with the rules of the court" where the case will be filed.  Phillips, 477 F.3d at 1077 (denying plaintiff access to a comb-binding machine) (emphasis added).  Armstrong was required by Supreme Court Rule 33 to file a certiorari petition that met very strict

formatting specifications.  By denying Armstrong computer access, the prison officials may have denied him the only means to submit a petition that complied with the rules of the Supreme Court.

This case is similar to <u>Phillips</u>.  In that case, the plaintiff alleged that prison officials violated his right to access the courts when they did not allow him to use a comb-binding machine to bind his certiorari petition.  <u>Id.</u> at 1074-75.  He was not able to use the comb binder prior to the deadline for filing his petition, and it was dismissed as untimely when submitted.  <u>Id.</u> at 1074.  The court found that although the Constitution did not require prisoners be given access to comb-binding machines, access to the comb binder was required in that case because Supreme Court rules required certiorari petitions to be bound, and the comb binder was the means the prison had available for that purpose.  <u>Id.</u> at 1077. Where court rules required binding, the prison was required to give prisoners access to a means of binding their petitions.  <u>See also</u> <u>Allen v. Sakai</u>, 48 F.3d 1082, 1089-90 (9th Cir. 1994) (finding prison officials violated plaintiff's right to access the courts by giving him a pencil rather than a pen to complete court papers because Hawaii court rules required handwritten documents to be in ink).

Armstrong was required to comply with the Supreme Court's formatting requirements, and accordingly, Defendants were required to provide him with a means of completing a petition that complied with those requirements.  <u>Cf.</u> <u>American Inmate Paralegal Assoc. v.</u> <u>Cline</u>, 859 F.2d 59, 61 (8th Cir. 1988) (finding no denial of access to the courts when plaintiff was not allowed to use typewriter because he could have submitted a handwritten complaint).  Because

the Court is analyzing this claim in connection with a motion to dismiss, the Court accepts as true Plaintiff's allegation that access to a computer is the only means by which he could have completed a certiorari petition that complied with the Supreme Court rules.  See Christopher, 536 U.S. at 406 (citing Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit, 507 US. 163, 164 (1993)) (accepting plaintiff's allegations as true and viewing them in the light most favorable to her when reviewing motion to dismiss); Scheuer v. Rhodes, 416 U.S. at 236 (stating that when deciding a motion to dismiss, the issue is not whether plaintiff will ultimately prevail, but whether he is entitled to offer evidence in support of his claims).  Although Plaintiff may not ultimately succeed on his denial of access claim, the Amended Complaint adequately alleges an injury caused by Defendant Ryan's failure to make a computer available for Armstrong's use.

> c.   Remedy

The third element is satisfied where the plaintiff has no remedy, save for the one requested in his denial-of-access suit, by which he can obtain relief.  The plaintiff's complaint must identify a remedy that may be awarded by the Court and which is unique to the denial of access claim.  Christopher, 536 U.S. at 422.

Armstrong does not have an independent tort cause of action separate from his denial of access claim that he can pursue.  See Phillips, 477 F.3d at 1079.  Additionally, Plaintiff prays for monetary damages, which could not be awarded by the filing of a successive certiorari petition or other state petition for post-conviction relief.  See id.  There is no other means by which he

can obtain the relief sought and thus, Armstrong sufficiently alleges facts to establish this element of the denial of access claim.

Plaintiff's Amended Complaint adequately alleges facts that, if true, would satisfy each of the elements of an access-to-courts claim. Armstrong's first cause of action should not be dismissed for failure to state a claim.

**2.   Claim Two:  Denial of Adequate Law Library Access**

Defendants contend that Armstrong's second cause of action fails to state a claim because Plaintiff's lawsuit against Jennifer Sutton was frivolous, and Armstrong fails to allege how additional library access would have cured the jurisdictional defect that caused the court to dismiss his case. (Defs.' Mem. 9.)

a.   <u>Frivolous Nature of the Underlying Claim</u>

Plaintiff's complaint filed in the underlying case, <u>Armstrong v. Sutton</u>, No. 04cv1513-IEG(RBB) (S.D. Cal. filed July 27, 2004), alleged that Jennifer Sutton, a Supreme Court Clerk, violated his right to access the courts by refusing to file his petition for certiorari. (<u>See</u> Pl.'s Mem. Exs. C, D, E.) Armstrong also asserted that he submitted a motion under Supreme Court Rule 22, directed to Justice Sandra Day O'Connor individually, which Sutton refused to file. (Pl.'s Mem. 9.)

The Clerk of the United States Supreme Court enjoys absolute quasi-judicial immunity for activities that are an integral part of the judicial process. <u>Sharma v. Stevas</u>, 790 F.2d 1486, 1486 (9th Cir. 1986) (citing <u>Morrison v. Jones</u>, 607 F.2d 1269, 1273 (9th Cir. 1979)). The filing of documents is "a basic and integral part of the judicial process" for which court clerks enjoy quasi-judicial

immunity unless they acted in "the clear absence of all jurisdiction." Mullis v. U.S. Bankr. Ct., 828 F.2d 1385, 1390 (9th Cir. 1987). Accordingly, a clerk is immune from liability for civil damages for making a decision not to file documents submitted to the court. Id. In light of this well-established rule, Armstrong's claim for monetary damages from Jennifer Sutton arising from her failure to file his certiorari petition and his Rule 22 motion was frivolous.

Plaintiff's complaint in the underlying case also requested that the district court issue an injunction requiring Sutton to transmit his Rule 22 motion to Justice O'Connor. Armstrong v. Sutton, Compl. 7, No. 04cv1513-IEG (RBB) (S.D. Cal. filed July 27, 2004). A lower court lacks jurisdiction to compel the Clerk of the Supreme Court to take specific action. In re Marin, 956 F.2d 339, 340 (D.C. Cir. 1992). Only the Supreme Court has supervisory authority over its Clerk. Id. Thus, Armstrong's request for injunctive relief was also frivolous because it sought relief that the district court lacked jurisdiction to grant.

> b. Causation

Plaintiff's civil case was dismissed by the district court for lack of jurisdiction because the court did not have power to review the Supreme Court Clerk's actions. (Pl.'s Mem. Ex. D at 1.) It was subsequently refiled in the Court of Federal Claims, and it was again dismissed. (Pl.'s Mem. Ex. E at 1-2.) The court found it did not have subject matter jurisdiction over Armstrong's suit because it lacked authority to entertain general civil rights claims, tort claims, or claims seeking injunctive relief from federal officials. (Id.) Plaintiff states that he was not aware

of these jurisdictional defects when the original complaint was filed.  (Pl.'s Mem. 10-11.)  It was only after his case was dismissed that he completed his legal research on the jurisdictional issues.  (Id. at 11.)  Thus, he argues, it was the lack of adequate time to conduct research in the law library that resulted in the dismissal of his case.  (Id.; Am. Compl. 4.)

Armstrong does not explain how additional research time would have cured his case's jurisdictional defects.  Indeed, even with more time to conduct research, Plaintiff would have been confronted with the same jurisdictional barriers.  Neither the district court nor the Court of Federal Claims had the power to hear his claims and grant him the requested relief.  Armstrong has not "demonstrate[d] that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim."  See Lewis, 518 U.S. at 351; see also Simkins, 406 F.3d at 1244 (stating that when the underlying case was adversely decided based on a deficiency unrelated to the lack of access, plaintiff has not suffered an actual injury).  Therefore, Plaintiff's second cause of action should be dismissed for failure to state a claim.

**3.   Claims Relating to Access to Photocopies**

Plaintiff also fails to state a claim for denial of access to the courts caused by the prison's policies for photocopying legal and non-legal materials.

"The Constitution requires that prison officials make it possible for inmates to prepare, file, and serve pleadings and other documents essential for pleading their causes."  Phillips, 477 F.3d at 1077 (citing Lewis, 518 U.S. at 346).  Courts have upheld a prisoner's right to have legal papers photocopied where

the inmate is willing to pay for the copies and where multiple copies of documents are required by the courts.  See, e.g., Allen v. Sakai, 48 F.3d at 1089; Gluth v. Kangas, 951 F.2d 1504, 1510 (9th Cir. 1991); Johnson v. Parke, 642 F.2d 377 (10th Cir. 1981); Giles v. Tate, 907 F. Supp. 1135, 1137-38 (S.D. Ohio 1995). "[A]lthough a prisoner does not have an unlimited right to free copying, some reasonable means of access to a photocopy machine will be necessary to protect an inmate's right of access to the courts." Giles, 907 F. Supp. at 1138.

But Armstrong has not identified any specific litigation, either past or present, that was impeded by his inability to photocopy nonlegal materials. (See Pl.'s Mem. 14-16.)  "[T]he underlying cause of action, whether anticipated or lost, is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation." Christopher, 536 U.S. at 424.  Plaintiff has not met his burden of pleading the existence of an actual injury caused by Defendants' conduct.  Armstrong has not made out a prima facie case of denial of access to courts because he has not shown that he had any pending litigation that was prejudiced by the prison's photocopy policy. See Giles, 907 F. Supp. at 1137 (citing Oswald v. Graves, 819 F. Supp. 680, 683 (E.D. Mich. 1993)).  Plaintiff's claim relating to the denial of photocopies should be dismissed.

**D.   Qualified Immunity**

"[G]overnment officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have

known."  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  A
constitutional right is "clearly established" if it is
"sufficiently clear that a reasonable official would understand
that what he is doing violates that right."  Hope v. Pelzer, 536
U.S. 730, 739 (2002) (quoting Anderson v. Creighton, 483 U.S. 635,
640 (1987)).  This standard ensures that government officials are
on notice of the legality of their conduct before they are
subjected to suit.  Id. (quoting Saucier v. Katz, 533 U.S. 194, 206
(2001)).  Qualified immunity is immunity from suit for monetary
damages, but it is not immunity from suit for declaratory or
injunctive relief.  Hydrick v. Hunter, 449 F.3d 978, 992 (9th Cir.
2006).  It protects "all but the plainly incompetent or those who
knowingly violate the law."  Malley v. Briggs, 475 U.S. 335, 341
(1986).

    "The threshold inquiry a court must undertake in a qualified
immunity analysis is whether plaintiff's allegations, if true,
establish a constitutional violation."  Hope, 536 U.S. at 736; see
also Saucier v. Katz, 533 U.S. at 201.  If the allegations make out
a constitutional violation, the next step is to determine whether
the right alleged to have been violated is "clearly established."
Saucier, 533 U.S. at 201.  In ruling on qualified immunity, the
court must decide the "'purely legal' issue of 'whether facts
alleged [by the plaintiff] support a claim of violation of clearly
established law.'"  Lytle v. Wondrash, 182 F.3d 1083, 1086 (9th
Cir. 1999) (quoting Mitchell v. Forsyth, 472 U.S. 511, 528 n.9
(1985)).

06cv852-L (RBB)

1      **1.   Claim One:  Denial of Computer Access**

2          **a.   <u>Violation of a Constitutional Right</u>**

3     Although Defendants argue that they are entitled to qualified

4  immunity, their focus on the Eighth Amendment is misplaced.  (Defs.

5  Mem. P. & A. Supp. Mot. to Dismiss 10.)  As discussed above,

6  Armstrong's Amended Complaint adequately alleges that he suffered

7  an actual injury when Defendants' actions caused him to miss the

8  deadline for filing a nonfrivolous certiorari petition.

9          **b.   <u>Whether the Right Was Clearly Established</u>**

10     Plaintiff's claim that he missed the deadline to file his

11  petition for certiorari alleges a constitutional violation, so the

12  qualified immunity analysis requires this Court to determine

13  whether the right was clearly established.  <u>Saucier</u>, 533 U.S. at

14  201.  "Whether the right is clearly established in a particular

15  case is judged as of the date of the incident alleged, and is a

16  pure question of law."  <u>Phillips</u>, 338 F. Supp. 2d at 1162 (citing

17  <u>Act Up!/Portland v. Bagley</u>, 988 F.2d 868, 873 (9th Cir. 1993)).  If

18  the right complained of was not clearly established at the time of

19  the incident alleged in Armstrong's Amended Complaint, the

20  Defendants are entitled to qualified immunity because they would

21  not have been able to anticipate that their conduct would result in

22  the violation of Plaintiff's constitutional rights.  <u>See</u> <u>Anderson</u>

23  <u>v. Creighton</u>, 483 U.S. 635, 639 (1987).

24     The general right to access the courts is a clearly

25  established constitutional right.  But in undertaking a qualified

26  immunity analysis, the Court must look at Plaintiff's allegations

27  "in light of the specific context of the case[]" and not in a

28

general, abstract manner.  <u>Saucier</u>, 533 U.S. at 201; <u>see also</u> <u>Anderson</u>, 483 U.S. at 639-40.

> The contours of the right must be sufficiently clear that
> a reasonable official would understand that what he is
> doing violates that right.  This is not to say that an
> official action is protected by qualified immunity unless
> the very action in question has previously been held
> unlawful, . . . but it is to say that in the light of
> pre-existing law the unlawfulness must be apparent.

<u>Anderson</u>, 483 U.S. at 640 (citations omitted).

Courts have repeatedly held that a prisoner does not have a constitutional right to use a computer or a typewriter.  <u>See</u>, <u>e.g.</u>, <u>Phillips</u>, 477 F.3d at 1077; <u>Cody v. Weber</u>, 256 F.3d 764, 770 (8th Cir. 2001); <u>Jackson v. Arizona</u>, 885 F.2d 639, 641 (9th Cir. 1989); <u>Sands</u>, 886 F.2d at 1169; <u>Am. Inmate Paralegal Assoc. v. Cline</u>, 859 F.2d 59, 61 (8th Cir. 1988); <u>Lindquist</u>, 776 F.2d at 858; <u>Sasnett v. Dept. of Corrs.</u>, 891 F. Supp. 1305, 1313 (W.D. Wis. 1995). Armstrong's case differs from many prisoner cases because Supreme Court rules required Plaintiff to submit a petition for certiorari that complied with strict formatting requirements, whereas the majority of prisoners proceed <u>in</u> <u>forma</u> <u>pauperis</u> and are thus allowed to submit handwritten documents.  It may not have been possible for Armstrong to submit a compliant petition without being given computer access.

But in light of the pre-existing law, it would not be apparent to a reasonable officer in Defendant Ryan's position that failing to provide Plaintiff with computer access would violate his right of access to the courts.

> The concern of the immunity inquiry is to acknowledge
> that reasonable mistakes can be made as to the legal
> constraints on particular police conduct.  It is
> sometimes difficult for an officer to determine how the
> relevant legal doctrine . . . will apply to the factual
> situation the officer confronts. . . . If the officer's

40

1            mistake as to what the law requires is reasonable,
2            however, the officer is entitled to qualified immunity.

3   <u>Saucier</u>, 533 U.S. at 205.  Although Plaintiff has sufficiently pled

4   a violation of his right to access the courts, the right to access

5   a computer was not clearly established at the time that Defendant

6   Ryan failed to provide him such access.  In light of the numerous

7   cases holding that prisoners are not entitled to use computers or

8   typewriters to create legal documents, a reasonable officer in

9   Defendant Ryan's position would not be on notice that denying

10  Plaintiff computer access would violate his right of access to the

11  courts.  Defendants are entitled to qualified immunity for

12  Armstrong's first cause of action.

13          **2.   Claim Two:  Denial of Adequate Law Library Access**

14              a.   <u>Violation of a Constitutional Right</u>

15      As discussed, Armstrong cannot establish that he suffered a

16  constitutional injury by receiving limited access to the prison law

17  library.  Even with additional library access, his underlying case

18  against the Supreme Court Clerk would have been dismissed because

19  neither the district court nor the Court of Federal Claims had

20  jurisdiction over Plaintiff's suit.  The qualified immunity inquiry

21  need proceed no further.

22              b.   <u>Whether the Right Was Clearly Established</u>

23      Even if Plaintiff's claim alleged a constitutional violation,

24  Defendants are nevertheless entitled to qualified immunity because

25  the right to have additional library access was not clearly

26  established.

27      Inmates have a fundamental right to access the courts, and

28  this right places an affirmative obligation on prison officials to

41                                                06cv852-L (RBB)

assure prisoners meaningful access.  <u>Bounds</u>, 430 U.S. at 828.  The obligation may be fulfilled "by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law."  <u>Id.</u> (footnote omitted).  No particular methodology is required, but prisoners must be given the capability to file nonfrivolous legal claims.  <u>Lewis</u>, 518 U.S. at 356.

Armstrong complains about Defendants' enforcement of the CDC policy reflected in the Department Operations Manual section 53060.10.  (Am. Compl. 4; Pl.'s Mem. 4.)  This policy allows inmates to access the law library for one two-hour period of time each week.  (<u>Id.</u>)  Inmates with verified court deadlines are given an extra two-hour period each week.  (<u>Id.</u>)  Plaintiff alleges that this policy deprived him of "meaningful access to the courts." (Pl.'s Mem. 4.)

Several courts have refused to find constitutional violations where inmates' access to law libraries was restricted.  <u>See</u>, <u>e.g.</u>, <u>Rhinehart v. Gomez</u>, No. 93cv3747, 1995 U.S. Dist. LEXIS 8382, at *20-21 (N.D. Cal. June 8, 1995) (finding no denial of access to courts where prisoner could access law library for two hours every two weeks); <u>Magee v. Waters</u>, 810 F.2d 451, 452 (4th Cir. 1987) (finding one hour per week in law library of city jail did not violate inmate's constitutional rights).  <u>But</u> <u>cf.</u> <u>Williams v. Leeke</u>, 584 F.2d 1336, 1338, 1340 (4th Cir. 1978) (finding three forty-five minute library sessions per week to be inadequate access); <u>United States v. Janis</u>, 820 F. Supp. 512, 515 (S.D. Cal. 1992) (ordering that inmate representing himself in criminal trial be given library access ten hours per week if requested).  Restrictions identical to those at issue here, allowing two hours

of library access per week for inmates without court deadlines and four hours per week for those with verified deadlines, were held to be "reasonable as a matter of law" by another district court. Zatko v. Rowland, 835 F. Supp. 1174, 1177 (N.D. Cal. 1993).

Allen v. City & County of Honolulu, 39 F.3d 936, 940 (9th Cir. 1994), cited by Armstrong, does not change this conclusion. (Opp'n 10.)  In Allen, the plaintiff was housed in the special housing unit ("SHU") of the prison and was forced to choose between two clearly established rights:  the right to outdoor exercise and the right to law library access.  Allen, 39 F.3d at 940.  Armstrong did not face an analogous Hobson's choice.  The first level appeal response to Armstrong's 602, reiterated in the director's level appeal decision, noted that "[t]he library sessions are two (2) hours in length and therefore do not preclude you from obtaining time on the yard for exercise, nor do they prevent you from attending family visits."  (Surreply Ex. A at 7, 11.)

"While Bounds guarantees the right of access to the courts under the Fourteenth Amendment, prisoners have no inherent or independent right of access to a law library or to legal assistance."  Wilson v. Blankenship, 163 F.3d 1284, 1290 (11th Cir. 1998) (citing Lewis, 510 U.S. at 349-51).  Supreme Court law does not dictate a minimum number of hours or any other requirement for satisfying the right of access to law libraries or legal assistance.  Vandelft v. Moses, 31 F.3d at 796; Walker v. Mintzes, 771 F.2d 920, 931 (6th Cir. 1985) (stating that Supreme Court, in Bounds, did not prescribe a specific amount of library time); Oswald v. Graves, 819 F. Supp. 680, 685 (E.D. Mich. 1993).

1    The right to a specified number of hours in the library, or to
2    go to the library on days other than one's regular day off (Comp.
3    Mem. of P. & A. 4), has not been recognized by the Supreme Court.
4    It is not clearly established.  Consequently, Defendants are
5    entitled to qualified immunity.  Reasonable officers in their
6    position could have believed that authorizing an inmate (like
7    Armstrong) to access the law library for two hours each week, or
8    four hours if he presented proof of a pending deadline, was a
9    reasonable limitation.

10   **E.    Defendants' Motion to Strike Plaintiff's Request for Punitive**
11   **Damages**

12   Armstrong's Amended Complaint seeks injunctive relief,
13   compensatory damages, and punitive damages. (Am. Compl. 7.)
14   Defendants move to strike Plaintiff's request for punitive damages
15   because Armstrong's allegations do not establish that Defendants
16   acted with evil intent.  (Def.'s Mem. 11-12.)

17   Under Federal Rule of Civil Procedure 12(f), the Court "may
18   order stricken from any pleading any insufficient defense or any
19   redundant, immaterial, impertinent, or scandalous matter."  Fed. R.
20   Civ. P. 12(f).  "[A] motion to strike may be used to strike any
21   part of the prayer for relief when the damages sought are not
22   recoverable as a matter of law."  Bureerong v. Uvawas, 922 F. Supp.
23   1450, 1479 n.34 (C.D. Cal. 1996) (citing Tapley v. Lockwood Green
24   Engineers, Inc., 502 F.2d 559, 560 (8th Cir. 1974) (per curiam)).

25   Punitive damages are available in § 1983 cases only where a
26   defendant's "conduct is shown to be motivated by evil motive or
27   intent, or when it involves reckless or callous indifference to the
28   federally protected rights of others."  Smith v. Wade, 461 U.S. 30,

06cv852-L (RBB)

56 (1986); <u>see</u> <u>also</u> <u>Dubner v. City and County of San Francisco</u>, 266 F.3d 959, 969 (9th Cir. 2001)); <u>Glosson v. Morales</u>, 469 F. Supp. 2d 827, 830 (S.D. Cal. 2007).  This test is alternately stated as allowing punitive damages only when the defendant acts maliciously, wantonly, or oppressively.  <u>Dang v. Cross</u>, 422 F.3d 800, 808 (9th Cir. 2005).

Plaintiff's Amended Complaint does not contain any factual allegations that would establish Defendants acted with an evil motive or with reckless or callous indifference to his federally protected rights.  Armstrong claims that Defendant Ryan "failed to respond" to Plaintiff's request to use a computer.  (Am. Compl. 3; Pl.'s Mem. 5.)  The assertion adds little to Plaintiff's claims for punitive damages.  (Opp'n 12.)  The Amended Complaint does not include any specific allegations about the mental state or motive of the other Defendants.  Armstrong has failed to adequately plead the existence of facts that would entitle him to punitive damages. Therefore, Defendants' request to strike his prayer for punitive damages should be **GRANTED**.  <u>See</u> <u>Hayes v. Woodford</u>, 444 F. Supp. 2d 1127, 1136 (S.D. Cal. 2006) (striking punitive damage claim from § 1983 complaint where plaintiff did not allege any facts regarding defendants' evil motive).

### V. PLAINTIFF'S MOTIONS TO FILE SUPPLEMENTAL PLEADINGS

Armstrong has filed three Motions pursuant to Federal Rule of Civil Procedure 15(d) in which he seeks to file supplemental pleadings asserting additional causes of action for instances where he was allegedly denied his right of access to the courts, all of which have occurred since the filing of his Amended Complaint.

Federal Rule of Civil Procedure 15(d) provides: "Upon motion of a party the court may . . . permit the party to serve a supplemental pleading setting forth transactions or occurrences or events which have happened since the date of the pleading sought to be supplemented." Fed. R. Civ. P. 15(d). This rule is one of judicial economy and convenience, allowing the Court to award complete relief to a plaintiff and avoid the cost, delay, and waste of time that would occur if a separate lawsuit was filed. Keith v. Volpe, 858 F.2d 467, 473 (9th Cir. 1988) (citing New Amsterdam Casualty Co. v. Waller, 323 F.2d 20, 28-29 (4th Cir. 1963)).

Claims asserted for the first time in a supplemental pleading must bear some relationship to the claims in the original pleading. Keith, 858 F.2d at 474. But "[w]hile some relationship must exist between the newly alleged matters and the subject of the original action, they need not all arise out of the same transaction." Id. The Court has broad discretion in deciding whether to allow a supplemental pleading; it should generally allow supplemental pleadings unless they will prejudice Defendants. Id. at 475 (citations omitted); see also La Salvia v. United Dairymen of Arizona, 804 F.2d 1113, 1119 (9th Cir. 1986) (allowing plaintiff to file a supplemental complaint because it would not unduly prejudice the defendants). In deciding whether to allow a supplemental pleading, the Court may consider the merits of the proposed new claims. Burka v. Aetna Life Ins. Co., 945 F. Supp. 313, 317 (D.D.C. 1996) (citing Weekes v. Atlantic Nat. Ins. Co., 370 F.2d 264 (9th Cir. 1966)).

A.    **Plaintiff's First Motion to Supplement**

In his first Motion, Armstrong requests that he be allowed to supplement his pleadings to allege a denial of access to the courts arising out of a separate lawsuit.  On December 3, 2002, Plaintiff filed a civil rights complaint in the case of <u>Armstrong v. Garcia</u>, No. 03cv0279-WQH(POR) (S.D. Cal. Mar. 17, 2005).  (First Mot. to Supplement 2.)  The district court granted summary judgment in favor of the defendants.  (<u>See</u> <u>id.</u> at 2-3.)  Armstrong appealed the judgment, and the Ninth Circuit affirmed on November 13, 2006.  (<u>Id.</u> at 3.)  If Plaintiff wanted to file a petition for rehearing, it had to be filed by December 2, 2006.  (<u>Id.</u>)

Armstrong alleges that he tried to access the prison law library on December 2, 2006, to make photocopies of his petition for rehearing so that it could be filed, but the library was closed.  (<u>Id.</u>)  He did go to the law library on December 4, 2006, and he completed and photocopied his petition.  (<u>Id.</u>)  He deposited the petition in the prison's internal mail system that day.  (<u>Id.</u> at 4.)  Plaintiff states that his petition was not received by the Ninth Circuit until December 8, 2006, at which time it was denied as untimely.  (<u>Id.</u>)

The Court may deny a motion to file supplemental pleadings when supplementation would be futile, such as where the newly-asserted claims would not survive a motion to dismiss.  <u>San Luis & Delta-Mendota Water Authority v. San Francisco Bay Assoc.</u>, 236 F.R.D. 491, 500 (E.D. Cal. 2006) (citing <u>Miller v. Rykoff-Sexton, Inc.</u>, 845 F.2d 209, 214 (9th Cir. 1988)).  Plaintiff's newly-asserted claim of denial of access to the courts would not survive a motion to dismiss because Armstrong failed to exhaust his

administrative remedies.  A prisoner must exhaust all available administrative remedies before filing a federal § 1983 lawsuit.  42 U.S.C. § 1997e(a); <u>Vaden</u>, 449 F.3d 1050.  "[When] the district court concludes that the prisoner has not exhausted nonjudicial remedies, the proper remedy is dismissal of the claim without prejudice."  <u>Wyatt</u>, 315 F.3d at 1120 (citing <u>Ritza</u>, 837 F.2d at 368 & n.3).

Plaintiff has not presented any evidence that he filed an administrative grievance complaining about the prison mail system or about not being allowed to access the library to photocopy his petition for rehearing so that it could be filed by the deadline. Under CDC regulations, Armstrong was required to file a 602 grievance within fifteen days of the event he complains of, but as of March 22, 2007, Plaintiff had not filed any inmate grievances complaining that he could not access the library in December 2006 to copy his petition for rehearing.  (<u>See</u> Edwards Decl. ¶ 7.) Accordingly, even if the Court were to allow Armstrong to file a supplemental complaint alleging these facts, the supplemental complaint would be dismissed for failure to exhaust administrative remedies.  Supplementation would be futile.  The district court should **DENY** Plaintiff's first Rule 15 Motion to Amend.

**B.    <u>Plaintiff's Second Motion to Supplement</u>**

In his second Motion, Armstrong describes another occurrence in which he claims he was denied access to the courts.  Plaintiff filed a case in California state court, <u>Armstrong v. Superior Court</u>, No. B197634, in which he sought to obtain police personnel files pursuant to the California Public Records Act.  (Second Mot. to Supplement 4.)  After he was denied relief by the superior court

and the court of appeal, Armstrong attempted to file a petition for review in the California Supreme Court.  (Id.)  The court rejected his petition as untimely because his last day to file a timely petition was April 7, 2007, but his petition did not reach the court until April 20, 2007.  (Id. at 5, Ex. A at 1.)

Plaintiff was instructed to file an application for relief from default no later than April 27, 2007.  (Id. Ex. A at 1.) Armstrong placed his application for relief from default in the mail on April 24, 2007, but it was not received by the court until May 2.  (Id. at 5, Ex. B at 1, Ex. D at 1.)  By the time it was received, the supreme court had lost jurisdiction to consider Plaintiff's application.  (Id. Ex. D at 1.)

In his Motion, Armstrong alleges that "there is no legitimate reason" why it took seven days for the supreme court to receive his application after it was mailed.  (Id. at 5.)  Plaintiff appears to claim that prison administrators prevented his application from arriving at the supreme court on time, and they did so in retaliation for his commencement of the underlying lawsuit.  (Id. at 6.)

Armstrong deposited his application in the prison mail on April 24, 2007.  (Id. at 5.)  His outgoing mail log shows that it was mailed from Calipatria State Prison to the California Supreme Court the following day, April 25, 2007.  (Id. Ex. C at 10.)  It was received by the supreme court seven days later, on May 2, 2007. (Id. Ex. D at 1.)  Plaintiff does not allege any facts that would show that Defendants, or any other specific individuals, committed any act that caused Armstrong's legal mail to be delayed in reaching the supreme court.  Evidence presented by Plaintiff shows

that the prison mailed his application on April 25, 2007.  Anything that happened to Armstrong's mail from the time it was deposited with the United States Postal Service until the time it was received by the California Supreme Court was not under the control of Calipatria prison officials.

Plaintiff has not alleged any facts that would establish Defendants caused a violation of his constitutional rights.  He has failed to allege the elements of a § 1983 claim -- that a person acting under color of state law committed conduct that deprived him of a constitutional right.  See 42 U.S.C. § 1983; Shah v. County of Los Angeles, 797 F.2d 743, 746 (9th Cir. 1986).  Accordingly, the filing of a supplemental complaint making these factual allegations would be futile because the supplemental pleading would be subject to dismissal for failure to state a claim.

Armstrong's Motion also complains that a document he filed in the present case -- his Opposition to Defendant's Motion for Order Requiring Plaintiff to Pay Filing Fees [doc. no. 24] -- was not received by the Court until ten days after it was deposited in the prison mail system, and as a result it was filed late.  (Id. at 7.) This allegation would similarly be subject to dismissal for failure to state a claim because Armstrong does not allege any facts showing that Defendants committed any acts which caused his Opposition to arrive at the Court late.  Additionally, Plaintiff cannot establish that he suffered an actual injury because the Court accepted his Opposition for filing.  Armstrong was not harmed or prejudiced in any way by the late filing of his Opposition.  See Treff v. Galetka, 74 F.3d 191, 194 (finding plaintiff did not establish constitutional injury where his legal mail from the

prison was delayed in reaching the court).  Plaintiff's second
Motion Pursuant to Rule 15(d) for Permission to Serve a
Supplemental Pleading should be **DENIED**.

C.   <u>**Plaintiff's Third Motion to Supplement**</u>

In his third Motion, Armstrong recounts the facts alleged in
his second Motion.  (Third Mot. to Supplement 5-6.)  Additionally,
he claims that the prison administrators committed further acts
that denied him access to the courts when they refused to mail
certain documents to the Court.  (<u>Id.</u> at 1-2, 6-7.)  On June 16,
2007, Plaintiff placed his Objection to Notice of Motion for
Protective Order in the prison deposit box, but as of June 28,
2007, his outgoing prison mail log indicated that it had not yet
been mailed.  (<u>Id.</u> at 1, 6.)  Also, on June 26, 2007, Armstrong
placed his Motion for Preliminary Injunction And/or Temporary
Restraining Order in the deposit box, but as of June 28, 2007, his
mail log showed that it had not been mailed.  (<u>Id.</u> at 2, 6-7.)
Plaintiff contends that prison administrators refused to mail these
documents in retaliation for his filing of the present lawsuit.
(<u>Id.</u> at 9.)

Armstrong's allegations fail to state a claim for denial of
access to the courts.  Contrary to Plaintiff's assertions, his
Objection to Motion for Protective Order [doc. no. 32] was received
by the Court and filed on June 19, 2007.  Armstrong's Motion for
Preliminary Injunction [doc. no. 34] was received by the Court and
filed <u>nunc</u> <u>pro</u> <u>tunc</u> to June 28, 2007.  Plaintiff's allegation that
"prison authorities have yet to actually forward either of the
documents to the parties so addressed" is erroneous.  Both
documents were received by the Court and accepted for filing.

Armstrong was not harmed or prejudiced in any way in his attempts to file these two documents.  The district court should **DENY** his Supplemental Notice of Motion for Permission to Serve Additional Pleadings because he has not, and cannot, allege facts that would constitute a violation of his right to access the courts.

## VI. PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

Armstrong filed a Motion for Preliminary Injunction and/or Temporary Restraining Order [doc. no. 34] pursuant to Federal Rule of Civil Procedure 65.  Plaintiff asks the Court to issue a preliminary injunction preventing the CDC from transferring him from Calipatria to another prison.  (Mot. for Prelim. Inj. 4.)  He asserts that Facility Captain A. Miller recommended a transfer from Calipatria to James Town Prison Camp, even though Plaintiff is not eligible for placement in a camp, in retaliation for this lawsuit. (Id. at 3-4.)

"A preliminary injunction is appropriate if the moving party demonstrates either (1) a probability of success on the merits and a possibility of irreparable injury, or (2) serious questions going to the merits and the balance of hardships tipping sharply in his favor."  Pratt v. Rowland, 65 F.3d 802, 805 (9th Cir. 1995) (citing Chalk v. U.S. Dist. Ct., 840 F.2d 701, 704 (9th Cir. 1988)). "Under any formulation of the test, plaintiff must demonstrate that there exists a significant threat of irreparable injury."  Oakland Tribune, Inc. v. Chronicle Publ'g Co., 762 F.2d 1374, 1376 (9th Cir. 1985).  The threatened injury must be imminent.  Los Angeles Mem'l Coliseum Comm'n v. Nat'l Football League, 634 F.2d 1197, 1202 (9th Cir. 1980).

1    This Court does not have the authority to issue an injunction
2  directed at an entity that is not a party before it.  <u>Zenith Radio</u>
3  <u>Corp. v. Hazeltine Research, Inc.</u>, 395 U.S. 100, 112 (1969); <u>United</u>
4  <u>States v. Marshall</u>, 526 F.3d 1349, 1354 (9th Cir. 1975); Fed. R.
5  Civ. P. 65(d).  Armstrong filed the present lawsuit against eight
6  Defendants:  L. E. Scribner, Warden of Calipatria State Prison;
7  Violet Thomas, Supervisor of Education Program; Anthony Variz,
8  Supervisor of Vocational Instruction; Jeff Schaller, Supervisor of
9  Correctional Education Program; Tim Ochoa, Chief Deputy Warden;
10 Nancy Grannis, Inmate Appeals Branch Coordinator; Stuart Ryan,
11 former Acting Warden; and M. E. Bourland, Chief Deputy Warden.
12 (Am. Compl. 2-2a.)  Plaintiff's Motion for Preliminary Injunction,
13 however, complains about the actions taken by the Classification
14 Committee on June 12, 2007, over which Captain A. Miller and P.
15 Alaniz presided.  (Mot. for Prelim. Inj. 3.)  Armstrong objects to
16 Miller's decision to recommend him for a transfer to a prison camp.
17 (<u>Id.</u> at 7-8.)

18    Neither Miller nor Alaniz are defendants in the present
19 action.  Plaintiff has not alleged any facts that would link
20 Defendants in any way to the actions of the Classification
21 Committee.  Armstrong's Motion seeks to enjoin persons who are not
22 parties to the present suit and conduct that is unrelated to the
23 claims contained in the Amended Complaint.  The Motion should be
24 denied.  <u>See</u> <u>James v. Scribner</u>, No. CV F-04-5878 OWW DLB P, 2007
25 U.S. Dist. LEXIS 8023, at *3-4 (E.D. Cal. Jan. 23, 2007) (refusing
26 to grant preliminary injunction against prison staff because they
27 were not named as defendants and the plaintiff failed to link their
28 conduct to the named defendants).

The Motion should also be denied because Plaintiff cannot show that any prison transfer was made in retaliation for this lawsuit. Prisoners do not have a constitutional right to be held in the prison facility of their choice. <u>Meachum v. Fano</u>, 427 U.S. 215, 225 (1976); <u>Pratt</u>, 65 F.3d at 806. But prison authorities are not permitted to transfer a prisoner in retaliation for the prisoner's exercise of a constitutional right, such as his right under the First and Fourteenth Amendments to access the courts for redress of grievances. <u>Pratt</u>, 65 F.3d at 806. Armstrong asserts that the proposed prison transfer is retaliation for litigating the present lawsuit. (Mot. for Prelim. Inj. 4.) Plaintiff, however, has failed to allege any facts that would establish a link between the present lawsuit and the Committee's decision to recommend Armstrong for placement in a prison camp. <u>See</u> <u>Pratt</u>, 65 F.3d at 807 (finding prison transfer was not retaliatory when plaintiff presented "no probative evidence to establish a crucial link" between the transfer and plaintiff's exercise of his First Amendment rights).

Armstrong's Motion for Preliminary Injunction also fails because he has not demonstrated a likelihood that irreparable injury would result from his transfer to a different institution. Plaintiff asserts that a transfer will cause irreparable injury because if housed in a prison camp, it would be impossible for him to conduct research, file timely documents, gather evidence, and conduct discovery in the present lawsuit. (Pl.'s Decl. in Support of Mot. for Prelim. Inj. 2.) These arguments are unavailing because, as discussed, Plaintiff's Amended Complaint should be dismissed by the district court. Armstrong cannot proceed with the present litigation because his first cause of action and his

allegations regarding photocopying are unexhausted, his second cause of action and his photocopy allegations fail to state a claim under § 1983, and Defendants are entitled to qualified immunity for all asserted claims.  Plaintiff's Motion for Preliminary Injunction and/or Temporary Restraining Order should be **DENIED**.

### VII. CONCLUSION

For the reasons stated above, Defendants' Motion to Dismiss should be **GRANTED**, and this action should be **DISMISSED** in its entirety.  Defendant's request to strike Armstrong's request for punitive damages should be **GRANTED**.  Plaintiff's three Motions to serve supplemental pleadings should be **DENIED**.  Armstrong's Motion for Preliminary Injunction and/or Temporary Restraining Order should also be **DENIED**.

This Report and Recommendation will be submitted to the United States District Court judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Any party may file written objections with the Court and serve a copy on all parties on or before **October 31, 2007**.  The document should be captioned "Objections to Report and Recommendation."  Any reply to the objections shall be served and filed on or before **November 16, 2007**.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the district court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

Dated:  September 28, 2007

_____
Ruben B. Brooks
United States Magistrate Judge

cc:  Judge Lorenz
     All Parties of Record